All right, please be seated, and if the clerk could please call the first case. 17-0293 Pupil v. Antonio Martinez. Counsel is going to argue. Please approach. I'm Maggie Harn for the Defendant Appellate. Okay. Margaret Smith, Assistant State's Attorney on behalf. Okay, the typical rules will apply 15 minutes per side. Save some time for rebuttal if you need any rebuttal, okay?  Thank you, Your Honor. May it please the Court. Counsel. My name is Maggie Heim, and I'm representing the Defendant, Antonio Martinez. This is his direct appeal following a jury trial. He was initially charged with aggravated robbery, an aggravated battery of Chris Piszczarczyk, an aggravated battery of Sean Kennedy. The jury ultimately convicted him of the lesser offense of robbery and acquitted on the aggravated battery of Sean Kennedy while convicting on the aggravated battery of Chris Piszczarczyk. So this is the stereotypical close case involving eyewitness identifications. Here, the eyewitness identification hinged entirely on the testimony of Chris and Sean, two witnesses who had serious credibility issues. There were two friends who had spent the evening celebrating Chris's birthday, and at 2 a.m. they went to Sean's car so that he could drive Chris home. There they were approached by two men, one of whom reportedly punched both of them and then continued beating Chris before taking his phone, $20, and them all fleeing. And the men ultimately identified Mr. Martinez as this man who had punched both of them and continued hitting Chris. But both men admitted that they had been drinking and smoking for hours before making this identification. And that showed in their testimony in other aspects. For example, Sean couldn't remember whether he was punched once by one assailant or had been punched more than once by both assailants. Chris admitted that he was too messed up to fight and had his arms up to block blows, and he also admitted that it was too dark to see whether the assailant had a weapon. Neither witness identified Mr. Martinez at any point in a photo array or in a lineup. Instead, the only pretrial identifications were show-ups done at the scene. Indeed, when Chris identified Mr. Martinez, Mr. Martinez was handcuffed on the curb sitting next to Chris's stolen phone, and Chris apparently thought because the phone was next to him it had been taken from Mr. Martinez when in fact the police had found it on the ground. Indeed, this case was so close that the jury found neither witness entirely credible. So the problem is twofold. The prosecutor and their zeal for a conviction in a close case reframed the jury's role not as in analyzing the strength of the identification testimony, but instead as rejecting a ridiculous defense conspiracy and in trying to keep a predator off the streets. And the second issue is that the trial court limited cross-examination of topics which went directly to the credibility of one of two witnesses with credibility issues. In such a close case, it's impossible to say that the prosecutor's actions and the limitations did not have some effect on the ultimate verdict. And I'll turn first to the prosecutorial misconduct issue. Here, the problem is that the prosecutor is faced with two witnesses who had significant issues in making their identifications. But rather than being satisfied with focusing just on the evidence that was presented or on the defense theory that they were rebutting, they encouraged the conviction based in part on fear and prejudice and on confusing the issue before the jury. The prosecutor started the closing argument by referring to Mr. Martinez as a predator out to hunt prey. This is animalistic and dehumanizing language, which also suggests an us-versus-them mentality where the jurors are the ones protecting themselves from this predator. And that's... Do you think the defendant used the same animalistic language in his closing argument? So the defendant in his closing, so after the prosecutor had said predator, did try to say, well, who's the real predator when this person was trying to – about to drive while inebriated? But there it's just fair – not fair comment. There it's just response. It's trying to pull the prejudice. You used the unfortunate word of predator. Both sides did. However, I don't think that what was done in this case rises to the level of what you're citing to in the cases in your brief. Sure. Well, I think it's important to recognize that the defense in using the word is using it in response to the fact that it's already been thrown at his client. And I don't think it's the word predator in isolation. It's predator combined with saying, Chris testified that he was afraid he was going to be killed. I think also importantly, characterizing the defense theory as these two friends having a great caper where they're punching each other in the face, it all sort of works together to create – to confuse the issue that was before the jury. Well, both sides used it very – in a limited fashion. Wouldn't you agree? The word predator? Mm-hmm. I think it's different when the defense is using it to try and pull the sting from the prosecutor using it. So I don't think the defense would have ever called Mr. Kennedy a predator if it were not an attempt to reframe as the actual issue before. Other than using that word, what else was done to inflame the passions of the jury? Well, so in rebuttal, the prosecutor was emphasizing that these were just two normal guys and that the defense theory required finding that they had concocted some conspiracy where they hit each other in the face to pin it on some neighbor. And that was never the defense theory. The defense theory wasn't that they were lying about everything. The defense theory was that their identifications were not reliable or perhaps being bolstered to make them appear more reliable by the time they got to trial. And the problem with this characterizing the defense theory is that the prosecutor does have special authority in front of the jury and the prosecutor bears the burden in the trial court. So it confuses the issue if you make it sound like the issue before the jury is is the defense requiring you to find these two guys are liars and conspiracists or is the issue how reliable is their identification in the first place? And I think mischaracterizing the defense's theory in that way confused the issue and it also denigrated the defense attorney in calling it some caper that these two men were concocting. The state also drew attention to the fact that Mr. Martinez did not himself take the stand or present evidence when, in fact, the defense theory rested on a relatively successful cross-examination of the state's two star witnesses. And then you have the prosecutor injecting herself and her integrity into the factual issues during the cross-examination of Sean Kennedy. There, when the defense attorney was cross-examining Mr. Kennedy, they were exploring whether or not any real or imagined hope or pressure was influencing his desire to testify. And Mr. Kennedy answered when asked if there were any explicit promises, no, there were no promises. So there was simply no reason in redirect to say, isn't it true that I had a conversation with you today and yesterday and told you no leniency? The style of questioning is inappropriate and distracts the jury from the actual credibility issue and what the defense was actually trying to explore. And it makes it about the prosecutor and their role outside of the courtroom. Well, didn't the defense explicitly ask the witness, you wouldn't mind if the state's attorney offered you leniency or a deal or some type of language along those lines? Correct. In exchange for your testimony? Well, so asking, I think. It's called opening the door. Well, so I think it's not opening the door because it's not asking whether there, he was asked whether there were explicit promises. And Kennedy clearly answered that there had been no promises. So the jury was aware that that was out there. But the defense is also allowed to explore whether there's real or imagined hope or promises. And that's what was being explored. So the fact that the prosecutor herself had these conversations doesn't go directly to rebutting that, but it does confuse the issue that the defense was trying to explore. I think it's important to also realize this isn't one question, right? I didn't offer you anything. Right. It was. It was one question and redirect. And a lot of the things that are brought out, well, so I think that's a good reason to talk about the DUI separately. Because it's not just the prosecutor and how they were using the evidence and how they were arguing. It's also the fact that the trial court limited cross-examination on two areas that went directly to the credibility of Sean Kennedy. So turning to the DUI, the prosecution was well aware that the defense wanted the jury to hear the severity of the charge that he was facing in determining whether there was any pressure or hope that he might be feeling in testifying favorably for the State. The trial court limited it to the simple fact that there was a pending DUI. And there wasn't any real reason given other than they didn't want to get into the facts. But there was no need to get into the facts. Well, it was a little bit more than that, wasn't it? Cross-examination? What they were allowed to get out. You weren't able to go into quite a bit about that offense. They were allowed to go through everything he was ticketed with, but only the pending things and not whether he was facing any jail time as a result. So they weren't allowed to do anything about the severity, meaning anything about whether he was facing jail time and coming in and testifying for the State and hoping for some sort of leniency. And that changes the calculus to recognize that the witness is trying to avoid potentially sitting in a jail cell. But there's no precedent for being able to go into details at that length that I'm aware of. Well, so the rationale, you're correct that we didn't have a case directly on point for that. But the rationale of the cases are that you're worried about the real or imagined pressure on the witness testifying. So when the bare name of the charge isn't enough, then the fact that you might potentially spend time in jail will change the calculus. And the case that we do have was the inverse, where they knew that the person was facing jail time but didn't know what the charge was. So I think the rationale should apply the same, that simply saying DUI doesn't tell you the severity of the charges. And the severity is relevant to the pressure that the witness might be feeling. The court also limited the defense's ability to cross-examine on whether Mr. Kennedy suffered from an addiction. Now, the defense was allowed to get out that he was smoking marijuana and drinking on the night of the offense, that he had smoked at least once before, and that he'd gotten this DUI subsequently. And that was enough that it was non-speculative to ask, well, do you have an addiction issue? And the Supreme Court has found that addiction is relevant to credibility in a unique way. It's not just the person's ability to perceive when they're under the influence, but also just their credibility overall. And here, it doesn't just go to his overall credibility, but you also had him on the stand denying that he was affected by the hours of drinking and smoking that had happened before. So it also went directly to the strength of his testimony in identifying Mr. Martinez and in claiming that he wasn't as inebriated as it might appear. So in this case, I think there's twofold reasons for letting the defense go further than just asking, did you do it that night, one night before, and at the DUI? I think that was enough for it to be non-speculative for the defense to explore what addiction issues there were for Mr. Kennedy. I think it's important in looking at how these things happened is to recognize how they happened together and that the prosecutor is not a defense attorney. Defense attorneys, we don't get special authority in speaking for the people of the state of Illinois, but the prosecutors have that and juries feel it, which is why there are those cases encouraging prosecutors to be very careful in not stepping over the line past their argument, even though there's wide latitude in cross-examination and in closing argument. It's vital, especially in a closed case, entirely based on eyewitnesses, that there is no crossing of that line. And in this case, I think starting by characterizing Mr. Martinez and Sean and Chris's prey and ending by emphasizing that these are just two normal guys at a birthday party, the only reason for making those arguments is to try and add some emotional weight behind the possibility of conviction. And here, this Court has faced is what was some sort of compromised conviction. Even Chris's testimony was not entirely believed because he testified that the same person that hit him had hit Sean Kennedy, but the jury rejected that, rejecting the charge against Mr. Kennedy entirely. So we have a case this close. I think any year... You're getting into why the jury did what they did, aren't you? Well, so I think it's just... You don't know, you can argue anything you want, but that's the jury's, the province of the jury. It's true. We don't know what the jury did, and in this case, I think we particularly don't know because the evidence was so close. So I think in that case, this is a reason why. I mean, you had Chris also testifying that he lifted his shirt in a way that was meant to make it seem as though he had a weapon, but he wasn't found guilty of aggravated robbery. So that's why I can only say you have some sort of a compromised verdict here where there are some acquittals and some convictions, and you have the fact that both witnesses were impeached with the fact that they were inebriated, the fact that it was dark, the fact that it was quick. You have Chris, who's the better witness, saying his arms were up to block flows, it was too dark to see if there was anything in the waistband, and he was too messed up to fight back. So you have all these problems, and those we know were there. Those were a part of it, and then our end result is a compromised verdict. And then you have the prosecutor saying, well, the defense theory is just that you have to believe these two guys came up with a great caper to pin it on their neighbor, when that was never the issue before the jury. The issue was always going to be what's the strength of the identification testimony, and where the prosecutor stands with such authority in front of a jury, I think it's important that those lines aren't crossed particularly in a close case. Again, there was no confession. There was no physical evidence on the phone showing that Mr. Martinez had it. There was no evidence. He had no evidence that he had recently been in a fight or bruising on his knuckles, yet you have the court limiting cross-examination on two separate topics directly relevant to one of the witnesses' credibility. And then you have the prosecutor ridiculing the defense theory and confusing what exactly the factual issue was before the jury. Here the prosecutor reframed conviction as the rejection of a ridiculous defense theory and a chance to keep the predator off the streets. And I think in a case this close, there's no way to know that conviction wasn't based on any of these oversteps. And as a result, I'm asking that this Court reverse and remand. Are there any questions? Thank you. For the people. Good morning, Your Honors. May it please the Court. I'm Assistant State's Attorney Margaret Smith representing the people of the State of Illinois. The people's redirect of Sean Kennedy in closing argument were proper. And if you look at the totality of each of these, the arguments, each of the people's comments was proper. And they do not become improper when considered cumulatively. We look at the fact that on redirect of Sean Kennedy, the people properly questioned Sean on redirect after his credibility was directly attacked on cross. On cross, the people's question was proper clarification of a question on redirect that left the unfair inference raised on cross that Sean was testifying in exchange for leniency in the DUI case. As pointed out, defense counsel asked, after Sean had previously testified on direct and also on cross, that he was not offered any leniency by the people, the defense on cross asked, it cannot hurt your case to testify for the State's Attorney. You don't want to go to jail. And those objections were sustained. And then when he asked, when counsel asked, certainly you wouldn't mind if the State's Attorney offered you a break in exchange for your testimony on the DUI, in this case, isn't that correct? Sean actually answered that, no, I wouldn't mind. So that left the jury with the unfair inference raised on cross that Sean actually thought that he was going to get a break. So this was proper clarification of the unfair inference raised on cross. How do you respond to the argument that the attorney should have been allowed to go into the details of the pending offense, the DUI offense? Okay. Well, first of all, this was the subject of a pre-trial motion, and the court tailored its decision based on the evidence presented at that motion. The court found that it could go into on cross the pending DUI, the charges, what he was arrested for, and whether or not there was any offer from the people. The court noted in making that tailored decision that defense attorney declined to make an offer of proof. So the court made that decision based on the evidence presented on the motion. The court did not rule all or nothing. The court said you can get into what he was arrested for, what the pending charges are for, and whether there was any offer from the people of leniency. If the trial court properly limited the examination here, the question, the important question the court found was whether or not there was an offer of leniency in exchange for the testimony. The sentence can go to that, but the heart of it is whether or not there was any promise of leniency. And the fact is that defense counsel actually got, asked Sean whether or not he certainly wouldn't mind if the state's attorney offered him a break in exchange for a testimony. And Sean actually answered that question, no, I wouldn't mind. And that's why the people made proper clarification on redirect of Sean in that instance. The other thing about the limitation of the cross is even if you assume, arguendo, that the trial court abused its discretion, any error was harmless, because as discussed, the cross, defense counsel elicited testimony that Sean wouldn't mind. You know, he could have had hope that the people would get leniency. Also, Sean has a Fifth Amendment right not to get into the details of pending charges, clearly. And then also you have the possibility that there would be no prejudice because the defense attorney could have elicited testimony from Sean that actually would have undermined defendant's theory that Sean was so impaired that he couldn't make a proper identification. Sean could have testified, yeah, I drink and smoke a lot. I can handle this stuff. I do it all the time. So if you take those factors, what was actually elicited by defense counsel on cross of Sean, the fact that Sean had a Fifth Amendment right not to testify about the details of pending charges, and the fact that defense counsel could have elicited testimony that undermines the defendant's theory, then you can see that any error, we contend there was no error. But if there was any error, that would have been harmless. Additionally, in terms of the closing argument, first of all, reviewing courts are not obligated to assume a jury accepted a comment's most damaging interpretation. And this Court must consider the statements in context of the closing arguments as a whole. And if you look at the totality of the arguments, each of the people's comments was proper, and they do not become improper when considered cumulatively. The comment of normal guys, the people were simply acknowledging that Chris and Sean were two young men who were drinking and smoking. And they were responding to the defendant's attack of their credibility and their repeated suggestions that these two men were liars. In regard to the use of the term predator, it was based on the evidence and reasonable inferences thereof, as the defendant acknowledged in his brief, the definition of predator means one who prays. And the facts here and evidence show that the defendant and the co-offender were waiting in the alley, and they were watching Sean and Chris at 2 a.m., and they were looking at them while they were on an isolated street that the defendant lived on, so he knew the territory. And they were walking to their car after drinking and smoking. And so it was based on the evidence that the defendant was taking advantage of the victims, and it was not used to describe defendant as an animal. I mean, this isn't the first time that the predator or prey has come up in a case on appeal, right? Absolutely not. One would think that maybe the prosecutors might lay off that argument. You could, but the fact is the question is whether or not it was improper here. No, I understand. And here, while maybe it was imprudent to use the term, here, unlike the cases cited, it was an isolated comment. It was used once. Counsel moved on, and it was not a theme in contrast to the cases that you're alluding to, Your Honor. Additionally, when the people did not mischaracterize the defendant's theory of the case, but made a permissible argument that the jury would need to find that Chris, Sean, and Officer Branca lied in order to believe defendant's version of events, contrary to what counsel argues, this was not a close case. You had Chris, you had Sean, and you had Officer Branca, who corroborated their testimony that they were just attacked, and that guy right there, he was right on the scene, the officer was right on the scene, and they turn around and say, that guy, and defendant's there, gets defendant, and they say, he took my phone. They find the phone right there. Chris and Sean identify defendant and show up immediately after the offense. They find the phone, walk over, hands it to Chris. Chris unlocks the phone. And so it's not a close case. You don't have a close case here. And the other thing is that Officer Branca testified that he didn't notice any impairment of either Chris or Sean. He couldn't tell that they were drinking or smoking. So this actually goes to the argument that counsel made, that they were too impaired to identify defendant properly. So we don't have just Chris and Sean who were too impaired to properly identify the defendant. We have Officer Branca's testimony to corroborate their identifications. Additionally, the people's comment that Chris gave up his phone because he didn't want to risk his life over it, that was a reasonable argument. That was a reasonable argument based on the facts and the reasonable inferences from Chris's testimony. It was not inconsistent for Chris to be fearful that defendant would use a weapon to hurt him if he did not turn over something to him and also deceive defendant about having a debit card that he didn't turn over because Chris was hoping that defendant would be placated by what he actually turned over. So these were reasonable inferences from Chris's testimony. So if you look at the totality of the argument, each of the people's comments was proper, and they do not become improper when considered cumulatively. So therefore, defendant has failed to establish error much less plain error. If there are no more questions for these reasons and those set forth in our brief, we respectfully request this Court affirm defendant's convictions. Thank you very much. Thank you. So looking first at the pending DUI, the defense asked Mr. Kennedy, are you facing jail time on your DUI? And there was an objection sustained, and the defense asked, do you want to go to jail? And again, an objection was sustained. So the fact that he was facing any jail time was completely kept from the jury. And again, the issue isn't just that there were pending charges, but the severity of those charges and the influence they might have on Mr. Kennedy's mindset in testifying for the state. So for the state to say that the defense was able to get all this out, but then at the same time there were objections sustained, so the only things that actually got before the jury were that there were charges and that there were no actual offers of leniency, but the cases recognized that it's not just actual offers of leniency, it's what the witness might think or hope or fear will happen, even without the prosecutor saying so one way or the other. And again, this was the issue that the defense was trying to explore and going beyond, were you given any promises, which is why the prosecutor inserting herself and saying, I didn't give you this yesterday or today, is not responsive and is not the correct way to ask that question. The state also mentioned that Sean's answers may have helped the defense because he might have answered that he smokes and drinks all the time. But again, this is something that the defense was blocked from getting out. The defense was trying to ask if he had a habit of drinking and smoking a lot because he was downplaying how inebriated he was, and the defense was blocked from being able to ask that. And that's the issue of how much the defense was allowed to explore his addiction and how it goes to his overall credibility, as well as how it goes to the strength that he was giving to his own identification in denying that he was inebriated. I also wanted to point out, I know that predator versus prey only came up once, but this is not something where it came up once in the rebuttal or it came up in the midst of going over things. This was the opening of the opening argument. So this was the theme statement. So I think it's important where it was, and it's very important how close the evidence in this case was. And I also want to point out that in People v. Peoples, the Supreme Court noted that they have repeatedly disapproved of using terms like, and in that case it was human predator. So it's not just that predator means you're dehumanizing and making him an animal. It's that calling someone a predator is distracting from the factual issue, and it's making it about this us versus them, or it's dehumanizing the defendant in such a way. It's just not going to the actual evidence. So People's disapproved of the use of the term human predator. So the simple fact that it can refer to a human doesn't mean that it's appropriate to open your argument by referring to a defendant as a predator. And finally, the state says that, oh, I just wanted to point out one other thing. It's not just that the prosecutor said he didn't want to get hurt, he didn't want to get killed. The prosecutor said he testified to you guys he didn't want to get killed. So the prosecutor went really far in confusing the testimony and saying that this is what the testimony actually said. And, again, that in isolation might be nothing, but in context of saying. I don't think he used the word testify, did he? I think so. No, I don't think so. Okay. I have it quoted, but it's definitely possible. Because I grant you that would be a greater misrepresentation than simply arguing told in their argument. Okay. So I have it quoted in my notes as testify, but I would have to look at the record again. And, of course, you guys have the sites. I'm talking about the defendant. No, this is the Chris. The prosecutor said that Chris testified to you guys. I thought you were arguing that they got up there and said the defendant testified. Yeah, that was he told. I grant you it would be somewhat appropriate. Right. That would definitely be asserting testimony. Although I do think in the case that the state brought forward on that issue, one of the courts that said referring to the defendant's actions okay recognized that they weren't pointing the finger at who was not putting on evidence, but just the fact that what evidence is out here. And here I think using the word told and the way it was does tend to put the light on what the defendant himself didn't put on, which is the burden of proof on the state. And the last thing is this idea that the evidence was not close. The state points to the fact that Officer Branca, is it Branca? Sorry, points out that the officer, the arresting officer, the guys pointed out right there on the scene was like that's him. Sean said that's him. Chris wasn't there. Sean also hadn't been there for the end of whatever robbery did occur. So you have one person. It's Sean who we have the credibility issues with. You don't have anything found on the person that they stopped. And the fact that Branca didn't think that Sean and Chris were impaired, that really wasn't the issue before him. But you have Chris himself saying I was too impaired to put up a fight. I just had to keep my arms up. So I think this idea that Branca's testimony somehow turns this from a close case with two eyewitnesses into an overwhelming case, it just can't stand. I think the case Piekowski, the case that says eyewitness ID cases are close cases, is one where you had police officers identifying someone after a hand-to-hand, and the Supreme Court still recognized when you're relying on an eyewitness ID and it's a credibility contest, that is our stereotypical close case. So I think this remains a close case, and the question has to become, was it all right to limit the testimony on addiction and whether or not Sean Kennedy was facing jail time and was feeling that pressure as he testified, and whether the prosecutor overstepped by characterizing the defense theory not as these are two guys who were inebriated and didn't know what they saw and are just trying to over-exaggerate now that they're here in court, but instead make it about the defense is coming up with this ridiculous theory that they punched each other in the face as a caper. This isn't a caper. It's not a joke. It's a criminal trial. So it's very important that particularly the prosecutor, as the representative of the people, stays within proper bounds and gets a conviction that this court can feel confident saying was not impacted at all by any stepping over of that line. If there are no other questions, we ask that this court reverse. Thank you. Thank you. Thanks again for the arguments and briefs on both sides. We will take the matter under advisement and issue an opinion forthwith. Thank you.